# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SAMMY LEE PETTES,

                Petitioner,                Case No. 21-cv-11726
                                                Hon. Jonathan J.C. Grey

v.

GEORGE STEPHENSON,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

Petitioner Sammy Lee Pettes, a Michigan state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for second-degree murder, Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Pettes raises three claims: the trial court improperly admitted two photographs of him holding a handgun, the trial court violated his right to a fair trial by admitting hearsay testimony, and appellate counsel rendered ineffective assistance.

The Court **DENIES** the petition and declines to issue a certificate of appealability. The Court grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I.  Background

Following a jury trial in Wayne County Circuit Court, Pettes was convicted of second-degree murder and felony firearm for the shooting death of Joseph Tanksley, Jr. on October 13, 2014 in Detroit. On October 26, 2015, he was sentenced to 15 to 30 years for the second-degree murder conviction to be served consecutive to 2 years for the felony-firearm conviction.

Pettes filed an appeal by right in the Michigan Court of Appeals. The Michigan Court of Appeals set forth the following relevant facts:

> This case arises from a conflict that occurred on the afternoon of October 13, 2014. While there were variations in the testimony, each witness to the events described a dispute between two groups. The victim, Joseph Tanksley Jr. (Joe Jr.), and his brother, Javontae Walker, resided with their mother on the even-numbered side of Beaconsfield Street in Detroit. Their father, Joseph Tanksley Sr. (Joe Sr.) was visiting on the day of the incident. The group containing defendant was made up of several young men who were visiting or planning to visit a house on the odd-numbered side of the street just opposite to the victim's home. The incident began when Javiez Maton, a friend of Walker's, walked down the street between the two houses with his girlfriend, Carissma Funches. Several individuals in the group on the odd-numbered side yelled a

2

vulgar comment at Funches. Maton responded appropriately, and Walker, who had observed the interaction, also responded verbally. One of the individuals on the odd-numbered side then jumped off of the porch and put a pistol to Maton's head. Over the next several minutes, additional individuals, including a young woman named Talaya Johnson, joined the group on the odd-numbered side of Beaconsfield, and several other individuals, including Walker's father and Joe Jr., the victim, joined the group of individuals on the even-numbered side of the street as the verbal altercation continued. The man threatening Maton with the pistol pulled back, but, several minutes later, a firefight erupted. Joe Jr. was shot in the firefight and died from his wounds that same day.

Talaya Johnson later identified defendant and another man, Teandre Kennedy, as the shooters from the odd side of the street, and Walker, who admitted to retaliating, as the only shooter from the even side of the street.[] Johnson stated that defendant was carrying a dark-colored six shot revolver and that Kennedy was carrying a silver automatic. The bullet ultimately recovered from Joe Jr.'s body was a revolver round.

The trial turned largely on the issue of identification. Defendant was identified as the shooter at trial by Joe Sr., Walker, and Johnson. Joe Sr. and Walker were impeached on the basis of the fact that both had failed to identify defendant in a line-up shortly after the incident. Joe Sr. offered no explanation for his failure to identify the defendant at the line-up. Walker testified that he purposely did not identify defendant because he wanted to take justice into his own hands and did not want the police involved. Johnson, who did identify defendant at the line-up, was impeached by testimony from several other prosecution witnesses that disputed her claim that she attempted to prevent the shooting and instead testified that she urged the group on the odd-numbered side of the street to start shooting.

Defendant's theory at trial was that he was not present at the incident and that he was home with his mother, who offered alibi testimony. Defendant also relied on the fact that out of eight witnesses who viewed the line-up, only Johnson identified him; the other seven did not identify him as the shooter or even as having been present. The prosecution explained the lack of line-up identifications as due to the fact that defendant had an unusual hairstyle and, because they could not find any other line-up participants with that hair style, they had all the participants in the line-up wear hats in order to avoid a situation where defendant obviously stood out from the others. As a result, the most salient characteristic of the defendant was not available for the witnesses to see during the line-up.

*People v. Pettes*, No. 330711, 2017 WL 2303335, at *1-2 (Mich. Ct. App. May 25, 2017). These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

The Michigan Court of Appeals affirmed Pettes's conviction and sentence. *Pettes*, 2017 WL 2303335 (Mich. Ct. App. May 25, 2017). Pettes sought leave to appeal in the Michigan Supreme Court, which the court denied. *People v. Pettes*, 501 Mich. 976 (Mich. Feb. 20, 2018).

Pettes then filed a motion for relief from judgment, but the trial court denied the motion. 12/17/2019 Order, *People v. Pettes*, No. 15-001023-01 (ECF No. 9-18). The Michigan Court of Appeals denied Pettes's application for leave to appeal, *People v. Payne*, No. 354421

4

(Mich. Ct. App. Oct. 23, 2020), as did the Michigan Supreme Court. *People v. Pettes*, 507 Mich. 954 (Mich. June 1, 2021).

Pettes then filed this habeas petition on July 16, 2021. He seeks relief on the following three claims. First, he claims that the trial court abused its discretion when it allowed the admission of two Facebook photographs. Second, Pettes claims he was denied his due process right to a fair trial by the admission of irrelevant hearsay evidence concerning a witness indicating being scared to testify, which he claims was substantially more prejudicial than probative of defendant's guilt for the instant charges. Third, he claims that his appellate counsel was ineffective, for failing to raise: (1) insufficient evidence, (2) ineffective assistance of trial counsel, and (3) failure to call potential witnesses.

Respondent has filed an answer in opposition arguing that the petition is untimely and, alternatively, that the claims are meritless. (ECF No. 8.) Petitioner has not filed a reply brief.

## II.   **Legal Standard**

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who

challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124-25 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited

to the record that was before the state court." *Cullen v. Pinholster*, 563
U.S. 170, 181 (2011).

## III.   Discussion

### A. Statute of Limitations

Respondent argues that the petition is barred by the one-year
statute of limitations. A one-year limitations period applies to all habeas
corpus petitions. 28 U.S.C. § 2254(d)(1). A prisoner must file a federal
habeas corpus petition "from the latest" of four dates: (A) the date on
which the state-court judgment became final; (B) the removal date of an
unconstitutional state impediment to filing for federal habeas relief; (C)
the date the Supreme Court recognizes a new constitutional right made
retroactive and applicable to collateral review; or (D) the date the
prisoner discovered new facts that could not have been discovered
previously. 28 U.S.C. § 2244(d)(1).

Pettes is not relying on a newly-recognized constitutional right or
on newly-discovered facts, and he has not alleged that a state-created
impediment prevented him from filing a timely petition. Consequently,
the relevant subsection here is § 2244(d)(1)(A), which states that a

conviction becomes final at "the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

The Michigan Supreme Court denied Pettes's application for leave to appeal on February 20, 2018. *People v. Pettes*, 501 Mich. 976 (Mich. Feb. 20, 2018). Pettes did not petition for a writ of certiorari with the United States Supreme Court. His conviction became final on May 21, 2018, the last day that he could seek certiorari. *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000) (one-year statute of limitations does not begin to run until the 90-day period for filing a petition for a writ of certiorari for direct review in the United States Supreme Court has expired). The last day on which a petitioner can file a petition for a writ of certiorari in the United States Supreme Court is not counted toward the one-year limitations period, so the limitations period began on May 22, 2018. *Id.* at 285.

The limitations period continued to run until Pettes filed a motion for relief from judgment in the trial court, on April 4, 2019. Respondent argues that the motion was filed on April 23, 2019, which is the date the motion was docketed. (ECF No. 8, PageID.266, ECF No. 9-1, PageID.316.) Under the prisoner mailbox rule, a *pro se* prisoner's court documents are

considered filed when the prisoner delivers them to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Absent contrary evidence, courts assume that a prisoner hands over a pleading to prison officials on the date the prisoner signs the complaint. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). While Pettes did not sign his motion for relief from judgment, his signed proof of service is dated April 4, 2019. (*See* ECF No. 9-16, PageID.1530.) Thus, his motion is considered filed on that date. The motion for relief from judgment tolled the limitations period with 48 days remaining. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation."). The limitations period continued to be tolled until the Michigan Supreme Court denied his application for leave to appeal on June 1, 2021. *People v. Pettes*, 507 Mich. 954 (Mich. June 1, 2021). The limitations period resumed running the following day, June 2, 2021, with 48 days remaining. The petition was timely filed on July 16, 2021, three days before the one-years limitations period expired.

## B. Evidentiary Rulings

Pettes's first two claims concern the trial court's evidentiary rulings. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Estelle*, 502 U.S. at 67-68; *see also White v. Steele*, 602 F.3d 707, 711 (6th Cir. 2009) ("State courts, after all are the final arbiters of the state law's meaning and application and [federal court] is not the appropriate forum to adjudicate such issues.") (internal quotation and citation omitted).

In rare circumstances, the federal courts will intervene when evidentiary rulings may violate constitutional due process (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003). The Supreme Court "defined the category of infractions that

10

violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991).

To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted). This standard accords the state courts "wide latitude ... with regard to evidentiary matters under the Due Process Clause." *Id.* To show that admission of evidence violated due process, a petitioner generally must identify "a Supreme Court case establishing a due process right with regard to [the] specific kind of evidence" challenged. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012).

### i. Facebook Photographs

Pettes challenges the admission of two photographs retrieved from what the prosecutor contended was Pettes's Facebook page. Each photograph showed Pettes holding a handgun, an automatic in one photograph and a revolver in the other. Pettes argues that the photographs were not admitted for a proper purpose, lacked a proper foundation, constituted improper propensity evidence under Mich. R. Evid. 404(b), and were unfairly prejudicial.

11

Pettes challenged the admission of the photographs on direct appeal and the Michigan Court of Appeals denied relief. The court ruled that the evidence was relevant and probative because "[e]vidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *Pettes*, 2017 WL 2303335, at *2. The state court also held that Mich. R. Evid. 404(b) was not implicated because the photographs were "not proof of any other crime nor were they even proof of a bad act unless one defines holding a gun or having access to a gun to be a bad act." *Id.* That court also determined that the officer-in-charge properly authenticated the photographs under Mich. R. of Evid. 901(b)(1) and that any questions regarding whether the Facebook page belonged to Pettes and whether the photographs actually depicted him were properly left for the jury to decide. *Id.* at *3.

Finally, the Michigan Court of Appeals held that the probative value of the photographs was not outweighed by the possibility of unfair prejudice. These are all issues of state law and the Court declines to comment on or intervene in these findings.

Petitioner failed to show a due process violation. He has not pointed to any authority, and the Court has found none, to establish that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, Supreme Court precedent.

Here, the trial court acted within the bounds of due process when it admitted these photographs. Habeas relief is denied on this claim.

### ii. Talaya Johnson's Testimony

In his second claim, Pettes maintains that the admission of Talaya Johnson's testimony that she had been threatened violated his due process right to a fair trial. The Michigan Court of Appeals held that the trial court did not abuse its discretion in admitting this testimony:

> At the outset of Johnson's testimony, the prosecutor asked her who fired the shots, and she stated that she could not remember. Only after the prosecutor showed Johnson the statement she gave pursuant to an investigative subpoena and asked if it refreshed her memory did she testify that it was defendant who fired the first shot. Later in the direct exam, the prosecutor stated that Johnson seemed not to be feeling well, a fact which she confirmed. The prosecutor then went into a series of questions regarding Johnson's behavior on the day of the preliminary exam. It was brought out that she had hidden in the courthouse bathroom during that proceeding and did not testify. The prosecutor asked her to explain that behavior. Johnson then testified that she and her family had moved to Georgia because "after I talked to the cops I had to move." She explained that during defendant's preliminary exam, her brother called her and told her that

13

defendant's girlfriend, told him that "she was going to send someone to my mom's house to shoot her house up."

The trial court overruled hearsay and prejudice objections to this testimony. It concluded that although the alleged report given to her by her brother was an out-of-court statement, it was not admitted for the truth of the matter asserted. Rather, the court concluded that it was admitted to explain Johnson's fearful state of mind. Given that Johnson initially testified that she could not remember who the shooter was, the prosecution was entitled to present evidence that this failure of memory was not due to doubts about the facts, but due to fear of retribution. Therefore, the trial court's ruling that the statement was offered not for the truth of the matter asserted but for its effect on the listener, was not an abuse of discretion.

We agree that the testimony about the alleged threats carried with it a significant risk of prejudice as it strongly suggested that whoever made the threats was worthy of punishment for doing so. However, Johnson did not testify that the threats came from defendant or even on his behalf. In addition, the jury was given standard instructions about evaluation of a witness's testimony including the relevancy of threats or promises made to a witness and that the jury was not to consider whether defendant was a bad person or had committed any other crimes.

Given the potential for prejudice, it would have been well within the trial court's discretion to exclude the testimony about the alleged threats. However, for the reasons just reviewed, we cannot say that it was an abuse of discretion for the trial court to have allowed the jury to hear the testimony. The trial court had the opportunity to observe Johnson's demeanor, which we do not, and it made a reasonable judgment that the testimony was necessary for the jury to properly evaluate her testimony, which was central to the case.

*Pettes*, 2017 WL 2303335, at \*4.

Pettes points to no Supreme Court case holding that testimony about threats admitted into evidence, to explain a witness's reluctance to testify, violates due process, and the Court is aware of none. The state court determined that the testimony was properly admitted under state law and the Court declines to consider whether its application of state law is correct.

## C. Ineffective Assistance of Appellate Counsel

In his third claim, Pettes maintains that he received ineffective assistance of appellate counsel because counsel failed to challenge the sufficiency of the evidence and failed to raise claims of ineffective assistance of trial counsel on appeal to the Michigan Court of Appeals.

To prove ineffective assistance of counsel, a movant must show that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance resulted in prejudice to the defense, such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts "must judge the reasonableness of counsel's challenged conduct

15

on the facts of the particular case, viewed as of the time of counsel's conduct," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689-90. The standards created by *Strickland* and § 2254(d) make habeas review of ineffective-assistance claims "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

In the context of an ineffective assistance of appellate counsel claim, a petitioner must show that counsel was objectively unreasonable in omitting a particular claim on appeal and that there is a reasonable probability that, but for counsel's error, petitioner would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . .. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Jones v. Barnes*, 463 U.S. 745, 754 (1983).

### i. Sufficiency of the Evidence

Pettes asserts that appellate counsel was ineffective for failing to argue that insufficient evidence supported his second-degree murder

16

conviction. Specifically, he maintains that the prosecution failed to prove the intent element of second-degree murder.

Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The elements of second-degree murder under Michigan law are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Goecke*, 457 Mich. 442, 463, (1998). Malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* Malice may be inferred from the use of a deadly weapon. *People v. Carines,* 597 N.W.2d 130, 136 (Mich. 1999).

The trial court issued the last reasoned state court opinion addressing Pettes's ineffective assistance of appellate counsel claims:

> In the instant case, several witnesses testified that the argument had already ended when the shooting began. Joe, Sr. testified that they had all retreated back into their house when the shooting began. He said that he and the group put

17

their rifle back into the house and stayed on the porch when Defendant came toward them shooting while Kennedy walked at an angle while shooting. Clearly, this is direct evidence that there was a "wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, supra. Hence, the jury could reasonably infer or conclude that "malice" was proven beyond a reasonable doubt.

12/17/2019 Opinion at 5-6, *People v. Pettes*, No. 15-001023 (Wayne County Cir. Ct. Dec. 17, 2019) (ECF No. 9-18, PageID.1546-47).

Pettes argues that, at most, the evidence supported a verdict of manslaughter. The trial court's decision is supported by the evidence, including testimony the altercation had ended and Walker was in the process of setting the rifle inside the house when Pettes began shooting in Walker's direction. Since the evidence is sufficient for a rational trier of fact to find that Pettes acted with malice, Pettes cannot show that his appellate counsel was ineffective for failing to raise this claim.

### ii. Ineffective Assistance of Trial Counsel

Next, Pettes maintains that appellate counsel was deficient by failing to raise two ineffective assistance of trial counsel claims. Specifically, Pettes argues that defense counsel was ineffective for failing to request a voluntary manslaughter instruction and for failing to call a former co-defendant as a witness. To evaluate whether appellate counsel

18

performed deficiently by failing to raise the ineffective assistance of trial counsel claims, the Court must "assess the strength of the claim[s] that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011).

The trial court held that counsel was not ineffective for failing to move for a voluntary manslaughter instruction because the evidence did not warrant the instruction. 12/17/2019 Opinion at 6-7 (ECF No. 9-18, PageID.1547-48). Under Michigan law, "[a] homicide may be reduced to voluntary manslaughter if the circumstances surrounding the killing show that malice was negated by adequate and reasonable provocation and the homicide was committed in the heat of passion." *People v. Harris*, 190 Mich. App. 652, 661 (Mich. Ct. App. 1991). The trial court reasoned that the evidence showed a "lapse of time from the time the argument . . . ended, and when the shooting began" such that Pettes did not act in the heat of passion and that the provocation was inadequate to "cause a reasonable person to act out of passion rather than reason." 12/17/2019 Opinion at 6-7 (ECF No. 9-18, PageID.1547-48).

Where, as here, a state court has assessed the necessity and adequacy of a particular jury instruction under state law, a federal

habeas court cannot second-guess that state-law finding. *Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003). "[T]he Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). Moreover, a decision not to request charges on lesser included offenses may be reasonable trial strategy. *See Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005); *see also Harrop v. Sheets*, 430 F. App'x 500, 507 (6th Cir. 2011) (counsel could have reasonably decided not to request a lesser offense instruction because such an instruction "would have diluted the other arguments [counsel] was advancing to the jury"). The decision to pursue an all or nothing defense with the goal of achieving a complete acquittal can be a reasonable one. *Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017). Here, trial counsel may have concluded that, because a voluntary manslaughter charge was inconsistent with the alibi defense, it was better to forego that instruction and seek a full acquittal. Pettes failed to overcome the presumption that counsel's decision was the result of sound trial strategy and is not entitled to habeas relief.

Next, Pettes argues that appellate counsel should have raised a claim asserting defense counsel was ineffective for failing to call co-

defendant Teandre Kennedy as a witness. To support this claim, Pettes

cites an affidavit executed by Kennedy in 2019 and submitted for the first

time with Pettes's motion for relief from judgment. (*See* ECF No. 9-20,

PageID.1720.) Kennedy stated, in relevant part:

> On the day of October 13th, 2014 myself and Sammy Pettes
> were on 11320 Lakepointe playing the game laughing and
> joking. We then got bored so we both went our separate ways.
> Sammy went to his mother's house and I went to see a female
> I met off Facebook. As I was walking up the block … I seen
> her and her brothers arguing with neighbors. … I heard
> threats about shooting. … [N]ext thing I know shots were
> fired. So me being a peace maker I shot in the air to disp[e]rse
> the group. I then ran to the mother of my child's house for
> safety because I didn't know what was going on. … [The
> police] were looking for Sammy and I, but we were not
> together after we departed from Lakepointe. I also
> volunteered to testify to tell them Sammy Pettes wasn't there
> but his lawyer didn't call me out. The girl that testified said
> Sammy was there because he was Hobsquad and she was mad
> at him because she got jumped by some Hobsquad guys so she
> chose Sammy Pettes out of anger.

(*Id.*)

The trial court noted that these types of affidavits are inherently

unreliable and untrustworthy and held that Pettes failed to overcome the

presumption that defense counsel's decision not to call Kennedy was

sound trial strategy. The trial court concluded that because defense

counsel was not ineffective, appellate counsel was not ineffective for

failing to raise this claim on direct review. 12/17/2019 Opinion at 7-8 (ECF No. 9-18, PageID.1548-49).

The trial court's determination was not contrary to, or an unreasonable application of, *Strickland* or *Jones.* Kennedy's affidavit does not exonerate Pettes because Kennedy did not state that he saw the shooter(s). He also cannot provide an alibi for Pettes because he does not claim he was with Pettes at the time of the murder. The affidavit is also not particularly credible given that it was signed over five years after the shooting and more than four years after the trial. Long-delayed affidavits like these which seek to exonerate a habeas petitioner are "treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993). Indeed, claims "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Id.* at 417. "[P]ostconviction statements by codefendants are particularly suspect because codefendants may try to assume full responsibility for a crime without any adverse consequences." *Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004). Particularly relevant here is that the affidavit does not inculpate Kennedy in any way. Therefore, Kennedy could execute the

affidavit to help Pettes without endangering his own interests. In light of the deferential standard of review applicable to ineffective assistance of counsel claims, Petitioner fails to rebut the "strong presumption" that counsel's decision not to call Kennedy as a witness fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Since the substance of Pettes's ineffective assistance of trial counsel claim lacks merit, Pettes fails to show a reasonable probability that his conviction would have been reversed on direct appeal even if appellate counsel had raised the issue. Thus, Pettes has not demonstrated that his appellate counsel constitutionally ineffective.

## IV.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

The Court grants Pettes leave to appeal in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## V.    Conclusion

For the reasons set forth, the Court **DENIES** the petition for writ of habeas corpus and **DENIES** a certificate of appealability. If he chooses to appeal this decision, Petitioner may proceed *in forma pauperis*.

**SO ORDERED.**


s/ Jonathan J.C. Grey
Hon. JONATHAN J.C. GREY
UNITED STATES DISTRICT JUDGE

DATED: August 28, 2024

24

<u>Certificate of Service</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 28, 2024.

<u>s/ S. Osorio</u>
Sandra Osorio
Case Manager

25